**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSE SAMUEL NOLASCO GAITAN, | Case No.: 2:26-cv-00428-APG-EJY |
| Petitioner | **Order Granting in Part Petition for a New Bond Hearing** |
| v. | [ECF No. 7] |
| TODD BLANCHE, *et al.*,[1] | |
| Respondents | |

Jose Samuel Nolasco Gaitan is a citizen of El Salvador currently detained by Immigration and Customs Enforcement (ICE). ECF No. 14-1.  He entered the United States in October 2018, was detained by ICE, and was released on his own recognizance under § 236 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1226.[2] ECF No. 7-2 at 5.  At some point he filed an application for asylum, withholding of removal, and deferral of removal. ECF No. 7-3 at 2.  He has three children, two of which are United States citizens. ECF No. 14-1 at 4.

In June 2025, Nolasco Gaitan was arrested for five domestic violence misdemeanors in Salt Lake City, Utah. ECF No. 14-3 at 7.  He pleaded guilty to assault and domestic violence in the presence of a minor child, and the remaining charges were dismissed without prejudice. ECF Nos. 14-3 at 4; 14-5.  In September 2025, ICE took custody of Nolasco Gaitan and commenced

---

[1] Acting Attorney General Todd Blanche is substituted for Pamela Bondi. Fed. R. Civ. P. 25(d).

[2] "[R]elease on recognizance constitutes a form of conditional parole from detention housed in the provisions of § 1226's discretionary detention." *J.U. Maldonado*, 805 F. Supp. 3d 482, 493 (E.D.N.Y. 2025); *see Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115-16 (9th Cir. 2007) (holding that the noncitizen was "conditionally paroled under the authority of § 1226(a)" when the government released him on his own recognizance soon after he entered the country); *Matter of Cabrera-Fernandez*, 28 I. & N. Dec. 747, 747 (BIA 2023) ("The [noncitizens] were detained for a few days after their initial apprehension and then released on their own recognizance pursuant to DHS' conditional parole authority under section 236(a)(2)(B) of the [INA], 8 U.S.C. § 1226(a)(2)(B).").

removal proceedings against him, alleging he was an alien present in the United States who has not been admitted or paroled in violation of § 212(a)(6)(A)(i) of the INA and that he did not possess valid documentation under § 212(a)(7)(A)(i)(I) of the INA. ECF No. 14-1 at 3-4.

In December 2025, Nolasco Gaitan requested a custody redetermination. ECF No. 14-8 at 2. The immigration judge (IJ) found that he was a danger to the community due to his two misdemeanor convictions for assault and domestic violence in the presence of a child and accordingly denied him bond. ECF No. 7-4 at 2. In January 2026, the IJ denied Nolasco Gaitan's petition for asylum and ordered him removed to El Salvador. ECF No. 7-3. He timely filed an appeal, which is pending. ECF No. 14-11 at 3-4.

Nolasco Gaitan filed this habeas corpus petition seeking a new bond hearing in which (1) the government must prove through clear and convincing evidence that he is a danger to the community or a flight risk, and (2) the IJ considers evidence related to all relevant factors for release. Nolasco Gaitan also requests meaningful notice and an opportunity to present a fear-based claim before being deported to a third country. The government responded that Nolasco Gaitan's petition is not ripe because he did not properly exhaust his administrative remedies by waiting for the Board of Immigration Appeals (BIA) to rule on his appeal before filing his habeas corpus petition.

## I.    HABEAS CORPUS PETITION

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art I. § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).  I have "equitable discretion" "as law and justice require" for remedying unlawful detention in habeas petitions. *Brown v. Davenport*, 596 U.S. 118, 128, 124 (2022) (quotation omitted).

**A.  Requiring Nolasco Gaitan to exhaust administrative remedies would be futile.**

The government argues the petition is not ripe.  But Nolasco Gaitan is suffering an injury in fact due to his current detention, and thus his petition is ripe under Article III. *Galvan v. Hermosillo*, No. 2:25-cv-02349-TMC, 2025 WL 3484755, at *2 (W.D. Wash. Dec. 4, 2025) (finding the noncitizen detainee's habeas petition was ripe even though an Immigration Judge had not yet determined his eligibility for bond).

The government next cites *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011), to argue that Nolasco Gaitan must exhaust his administrative remedies before filing a habeas petition.  *Leonardo* held that a noncitizen in removal proceedings must appeal an IJ's adverse bond determination to the BIA before seeking habeas review, "unless exhaustion is excused." *Id.* at 1160.  This is a prudential requirement, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Alvarado v. Mattos*, No. 2:26-cv-00416-APG-DJA, 2026 WL 963227, at *2 (D. Nev. Apr. 9, 2026).  "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the

proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo*, 646 F.3d at 1160. I "may waive the prudential exhaustion requirement" if the "pursuit of administrative remedies would be a futile gesture." *Hernandez*, 872 F.3d at 988 (9th Cir. 2017) (quotation omitted).

It would be futile for Nolasco Gaitan to appeal his bond determination to the BIA. The BIA adopted the government's interpretation that § 1225(b)(2)(A) mandates detention of noncitizens like Nolasco Gaitan in *Matter of Hurtado*, 29 I. & N. Dec. at 229. *Hurtado* "serve[s] as precedent[] in all proceedings involving the same issue" before the BIA, and so the BIA will decide it lacks jurisdiction to release him. 8 C.F.R. § 1003.1(g)(2); *Pacham v. Archambeault,* No. 3:25-cv-03163-GPC-DEB, 2025 WL 3653984, at *3 n.2 (S.D. Cal. Dec. 17, 2025) (noting that *Hurtado* is a precedential decision of the BIA). The IJ's finding that Nolasco Gaitan should be denied bond because he is a danger to the community does not change this fact. "Where the [BIA's] position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required." *Szonyi v. Barr*, 942 F.3d 874, 891 (9th Cir. 2019) (quotation omitted). Therefore, I waive the prudential exhaustion requirement and will consider Nolasco Gaitan's petition.

**B. Nolasco Gaitan is not entitled to a new bond hearing at which the government bears the burden of clear and convincing evidence.**

Nolasco Gaitan argues that his previous bond hearing did not provide him due process because the burden of proof was placed on him. He contends that due process demands that the government should have to prove by clear and convincing evidence that he must be detained.[3]

---

[3] I have jurisdiction to review immigration bond determinations over "constitutional claims" or "questions of law." *Hernandez*, 872 F.3d at 988 (quotation omitted).

4

The government did not respond to this argument, continuing its repeated failure in these habeas cases to respond to many of the substantive arguments raised by noncitizens detained under its rejected interpretation of § 1225.

Nonetheless, the Ninth Circuit has relevant precedent on this issue, and ignoring it would likely constitute clear error on appeal. In *Rodriguez Diaz*, the Ninth Circuit rejected a claim that it is "constitutionally inadequate" for a noncitizen to bear the burden of proof at his initial immigration bond hearing. 53 F.4th at 1210. It instead held that "§ 1226(a)'s procedures satisfy due process, both facially and as applied" to the petitioner in that case. *Id.* at 1213. But the Ninth Circuit did "not foreclose all as-applied challenges to § 1226(a)'s procedures." *Id.* For example, it left open the question whether placing the burden on the noncitizen could create an unacceptably high risk of erroneous deprivation of the noncitizen's interest because the noncitizen experiences language and cultural barriers, difficulty obtaining evidence, and financial inability to hire an attorney. *Id.* at 1211.

Nolasco Gaitan does not assert he faced similar issues. He argues that the IJ did not weigh the discretionary factors under *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006). This alleged error does not create an unacceptably high risk of erroneous deprivation of Nolasco Gaitan's interests in his new bond hearing such that the Constitution mandates the government bear the burden. Thus, Nolasco Gaitan's claim regarding the burden of proof fails, and he bears the burden by a preponderance of evidence at his new bond hearing.

**C. Nolasco Gaitan is entitled to a new bond hearing at which the IJ considers factors including, but not limited to, his criminal record.**

In December 2025, an IJ responded to Nolasco Gaitan's request for a custody redetermination and denied bond on the following grounds: "Danger to the community. Two

assault convictions." ECF No. 7-4 at 2. The decision also listed the five criminal charges and their disposition. *Id.* Nolasco Gaitan argues that despite the claimed "full consideration of the evidence presented," this conclusory explanation shows the IJ did not take the full record into account. *Id.* The government does not respond to this argument.

Generally, an IJ deciding whether to release a noncitizen on bond "must consider whether an alien who seeks a change in custody status is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Guerra*, 24 I. & N. Dec. at 40. "[I]n determining whether an alien merits release from bond," an IJ "may look to"[4] factors such as "(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States." *Id.* "When nothing in the record or the [IJ's] decision indicates a failure to consider all the evidence," I "will rely on the [IJ's] statement that [they] properly assessed the entire record." *Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (simplified). The IJ need not "discuss each piece of evidence submitted." *Id.* (quotation omitted). However, if the decision maker "fails to mention highly probative or potentially dispositive evidence," I do not credit a "catchall phrase to the contrary." *Id.* (simplified).

---

[4] "[T]he word 'may' . . . implies discretion." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 310 (2020) (quotation omitted).

6

Here, Nolasco Gaitan asserts that the record does not show the IJ considered relevant factors, including that he has family members who are U.S. citizens and that he has a history of compliance with immigration requirements. ECF No. 7 at 7.  The government does not dispute that the record does not show that the IJ considered these relevant facts in determining whether Nolasco Gaitan should be released on bond.  Nor does it otherwise defend the IJ's decision because it did not respond to Nolasco Gaitan's argument on this issue.  It therefore consents to my issuing relief on this ground. LR 7-2(d).  I therefore order a new hearing in which the IJ considers these facts.

### D. Nolasco Gaitan may not be deported to a third country without notice and a meaningful opportunity to present a fear-based claim.

Nolasco Gaitan is a citizen of El Salvador, and the Immigration Judge ordered him removed to El Salvador. ECF Nos. 14-1 at 3; 7-3 at 4.  Nevertheless, he argues that ICE's policy to remove noncitizens to a third country without notice and an opportunity to present a fear-based claim violates due process and the APA.  Again, the government does not respond to this argument.

There is no evidence that the respondents currently intend to remove Nolasco Gaitan to a third country.  However, if the government does later attempt to remove him to a third country, it must comply with the due process requirements of notice and a reasonable opportunity to be heard before a third country removal can be effectuated.[5] *Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763 at *4 (D. Nev. Apr. 22, 2026) (collecting cases).  The government must provide "written notice of the country being designated" and "the statutory

---

[5] Because I agree with Nolasco Gaitan's due process argument, I do not address his argument under the APA.

basis for the designation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019). Additionally, the government must ask Nolasco Gaitan whether he fears persecution or harm upon removal to the third country, and his response must be memorialized in a writing signed by Nolasco Gaitan. *Id.* "If the noncitizen expresses a fear of persecution or harm, DHS must inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts." *Id.* Finally, the government must give Nolasco Gaitan "adequate time to prepare and file a motion to reopen in order to challenge DHS's country designation and/or apply for asylum, withholding, and relief under the CAT." *Id.* at 1020; *see also A.A.M. v. Andrews*, --- F. Supp. 3d ---, No. 1:25-cv-01514-DC-DMC (HC), 2025 WL 3485219, at *9 (E.D. Cal. Dec. 4, 2025) (concluding the petitioner was likely to succeed on the merits because "due process requires Petitioner be provided an opportunity to have his fear-based claims for removal to [a third country] considered by an immigration judge").

### E.  CONCLUSION

I THEREFORE ORDER that petitioner Jose Samuel Nolasco Gaitan's petition for habeas corpus **(ECF No. 7) is GRANTED in part**.

I FURTHER ORDER that the respondents must provide Jose Samuel Nolasco Gaitan with a new individualized bond hearing by May 15, 2026, at which the immigration judge must consider all relevant factors in determining whether he is a danger to the community or a flight risk. Nolasco Gaitan bears the burden of proof by a preponderance of evidence at this new bond hearing.

I FURTHER ORDER that the respondents are prohibited from removing Jose Samuel Nolasco Gaitan to any third country without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of providing him a

reasonable opportunity to reopen immigration court proceedings to seek fear-based relief from removal, with a hearing before an immigration judge.

I FURTHER ORDER the clerk of court to close this case.

DATED this 7th day of May, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

9